UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                            Case No. 03-12288-WRS
                                                 Chapter 11
CULVERHOUSE INC.,

    Debtor

CULVERHOUSE INC.,

    Plaintiff                                Adv. Pro. No. 04-1015-WRS

v.

SATURN TRANSPORTATION SYSTEMS INC.,

    Defendant

## MEMORANDUM DECISION

This Adversary Proceeding is before the Court upon the motion of Defendant Saturn Transportation Systems, Inc., to compel arbitration. (Doc. 5). First, the Court will review the history of this proceeding. Second, the Court will consider the nature of the Culverhouse's claim against Saturn Transportation and Saturn's claim against the Debtor. Third, the Court will consider whether enforcement of the arbitration clauses in the contracts would conflict with any Bankruptcy Code policies. Finding that arbitration would conflict with Bankruptcy Code policies, Saturn Transportation's motion to compel arbitration is DENIED.

## I. PROCEDURAL HISTORY

On October 1, 2003, Plaintiff Culverhouse, Inc., filed a petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. On February 9, 2004, Culverhouse filed a complaint seeking damages and injunctive relief, alleging that Saturn had breached the terms of one or both

of the contracts the parties had entered into. Saturn Transportation promptly moved this Court to compel arbitration, citing provisions in the contracts. (Doc. 5). On April 21, 2004, the Court, with the agreement of the parties, referred this matter to mediation. (Doc. 15). Mediation was not successful and the Court will now consider Saturn Transportation's motion to compel arbitration. On July 7, 2004, Saturn Transportation filed an application for administrative expenses in the Culverhouse bankruptcy case. (Case No. 03-12288, Doc. 252).[1] On July 16, 2004, Culverhouse moved to amend its complaint. (Doc. 22, 23). The parties have briefed the motion. (Docs. 5, 21, 26).

## II. CULVERHOUSE'S CLAIM AGAINST SATURN AND SATURN'S CLAIMS AGAINST CULVERHOUSE

On March 17, 2003, Saturn Transportation and Culverhouse entered into two contracts which they styled: (1) "Independent Sales Representative Agreement," and (2) "Master Independent Contractor Operating Agreement Percentage Based Compensation." In general terms, the contracts call for Culverhouse to use its trucks and drivers to haul freight and to provide other transportation related services for Saturn Transportation in return for compensation. Both contracts contain arbitration clauses. (Doc. 5).

In its complaint, Culverhouse alleges that Saturn took action in December 2003 and

---

[1] The reader should bear in mind that bankruptcy courts create separate files with separate docket sheets for adversary proceedings. When a bankruptcy case is filed, a bankruptcy case file is created. When an adversary proceeding is filed, a separate case file is created. See, Rule 7001, Fed. R. Bankr. P. As this Memorandum Decision is filed in the Adversary Proceeding file, all references to documents filed in the bankruptcy case file will be preceded by a case number reference. References to documents filed in this Adversary Proceeding will be made solely to the docket number without a proceeding reference to the Adversary Proceeding number.

January 2004, which culminated in the termination of these contracts. (Doc. 1). For example, a letter dated January 12, 2004, from Saturn to Culverhouse appears to be an attempt to alter the terms and conditions of the contract. The January 12 letter indicates that these changes were needed to "make economic and operational sense for Saturn." Culverhouse apparently failed to accede to Saturn's demands for concessions and as a result, by letter dated January 16, 2004, Saturn gave notice that it was terminating their contractual relationship, citing "numerous safety issues." At a minimum, Culverhouse has raised an inference that safety issues were a pretext for termination of the agreement and that the true motivation was Culverhouse's refusal to meet Saturn's demands for contract concessions.

Rather than file a counterclaim in this Adversary Proceeding, Saturn Transportation filed an application for administrative expenses in the main bankruptcy case on July 7, 2004, seeking the allowance of an administrative expense claim in the amount of $59,260.75.[2] (Case No. 03-12288, Doc. 252). Examination of Saturn's claim indicates that it consists of two components, both of which flow from the termination of the contracts. The first component of the claim consists of a charge in the amount of $25,284.00 for incidental on board equipment (that is equipment on board trailers owned by Saturn which were in the possession of Culverhouse). The second component consists of transportation costs for the failure of Culverhouse to return 19

---

[2] The procedural posture of this Adversary Proceeding has become somewhat convoluted in recent weeks. On July 16, 2004, Culverhouse moved to amend its complaint. (Doc. 22). This Court has not yet ruled upon that motion, nevertheless Saturn has filed an answer to the amended complaint and added a counterclaim to boot. (Doc. 27). The Counterclaim appears to encompass the issues raised in the administrative claim and adds a claim for "interference with business relations." Therefore, it appears the counterclaim includes all of the items in the administrative period claim and adds at least one substantive claim which was not a part of the administrative period claim.

trailers to Minnesota, as called for by the contract. It goes without saying that if Culverhouse is correct in its claim that Saturn unlawfully terminated the contracts, then the transportation charges will not be owed. In other words, Saturn would not be entitled to impose a charge for wrongfully repossessing the trailers. Therefore, a substantial portion of Saturn's administrative claim turns on the question of whether the contracts were lawfully terminated.

Examination of the two contracts in question, the complaint filed by Culverhouse in this Adversary Proceeding, and the administrative expense claim filed by Saturn in the main bankruptcy case, reveals that these conflicting claims arise out of a common nucleus of facts. It is not practical to consider Saturn's administrative expense claim without considering Culverhouse's claim that the contracts were unlawfully terminated.

### III. ARBITRATION OF CULVERHOUSE'S CONTRACT CLAIM AGAINST SATURN WOULD CONFLICT WITH UNDERLYING BANKRUPTCY CODE POLICIES

We start with the proposition that by enacting the Federal Arbitration Act (FAA), Congress established a Federal policy favoring arbitration agreements. MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 974 (11th Cir. 1999), citing, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); see generally, 9 U.S.C. § 1, et. seq. The existence of an arbitration clause in a contract does not, in every instance, mandate that the matter be referred to arbitration. Before such a clause is enforced, the Court must determine whether there are conflicting Federal policies which might countervail the arbitration clause. While there is no authority which is binding upon this Court which sets forth the standard to be applied by a bankruptcy court in a case such as the one at bar, the Fifth Circuit handed down a

4

Case 04-01015  Doc 29  Filed 09/23/04  Entered 09/23/04 11:46:23  Desc Main
Document      Page 4 of 9

decision recently which this Court finds persuasive. See, Gandy v. Gandy (In re: Gandy), 299 F.3d 489, 494-95 (5th Cir. 2002). The Court in Gandy stated that "a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving "core" bankruptcy proceedings . . . a bankruptcy court does possess discretion, however, to refuse to enforce an otherwise applicable arbitration agreement when the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding conflicts with the purpose of the Code." Id. at 495.

Culverhouse contends that its claim against Saturn Transportation is within this Court's core jurisdiction and for that reason, it should not be referred to arbitration. Saturn contends that Culverhouse's claim is non-core, and contends that it should be referred to arbitration, citing a recent decision of the Fifth Circuit which holds that a bankruptcy court has no discretion to refuse arbitration of a non-core proceeding. While there is no authority which is binding upon this Court precisely on point, it would appear that the core versus non-core distinction is a material distinction. A bankruptcy court may deny arbitration of a core proceeding, if it finds that arbitration would conflict with the purpose of the Bankruptcy Code. See, In re: Gandy, 299 F.3d 489 (5th Cir. 2002)(affirming decision of Bankruptcy Court which found that arbitration of core proceedings would conflict with the purpose of the Code); Insurance Company of North America v. NGC Settlement Trust & Asbestos Claim Management Corporation, (In re: National Gypsum), 118 F.3d 1056 (5th Cir. 1997)(holding that determination whether suit was barred by bankruptcy discharge injunction was a core proceeding and that the Bankruptcy Court properly

refused to send the matter to arbitration); Hays and Company v. Merrill Lynch Pierce Fenner & Smith, Inc., 885 F.2d 1149 (3rd Cir. 1989)(arbitration ordered in noncore proceeding).

Culverhouse contends that this is a core proceeding citing the provisions of 28 U.S.C. § 157(b)(2)(B), (C). These two provisions provide that claims against the estate and counterclaims by the estate against those who have filed claims are core proceedings. Even more compelling in this Court's view is the fact that Saturn claims an administrative period expense.[3] Administrative period claims must be paid in cash and in full on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). Thus, the allowance of an administrative period claim has a significant impact upon the plan confirmation process. In some instances, the allowance of an administrative period claim may be determinative on the question as to whether a plan may be confirmed. Moreover, even if it is not determinative, the allowance of an administrative period claim has a dramatic impact upon the distribution to creditors. The more that is given to administrative period claims, the less which remains available for distribution to other creditors, who do not have priority. If Saturn's motion were granted, a significant portion of the plan confirmation process would be farmed out for arbitration, clearly conflicting with underlying policies of the Bankruptcy Code.

Saturn Transportation would have Culverhouse's claim sent to arbitration, yet it interposes its administrative expense claim here. This violates a well-established policy against piecemeal litigation. See, e.g., Ambrosia Coal and Construction Co. v. Pages Morales, 368 F.3d 1320 (11th Cir. 2004). If piecemeal litigation were ordered, the parties would have to try many of the same factual issues twice, in two different fora. This would impose unnecessary costs on an

---

[3] Administrative expenses are those which arise from the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). These claims are afforded the highest priority under the Bankruptcy Code. 11 U.S.C. § 507(a)(1).

already financially-stressed Debtor and would create a risk of inconsistent adjudications. Policy considerations favoring arbitration pursuant to the terms of the contracts are outweighed by Bankruptcy Code policy concerns effecting not only the parties here but the entire creditor population.

Administrative claims, such as that interposed by Saturn here, if allowed, must be paid in cash, in full, on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). Allowance of an administrative period claim has an immediate and direct impact upon the plan confirmation process. First, an administrative-period claim must be paid in full upon confirmation. Allowance of such a claim necessarily diminishes the amount available for distribution to other creditors. To the extent that the plan confirmation process is a zero sum game, amounts paid to administrative priority creditors necessarily diminishes the amount available to others. Second, there are two separate aspects of the allowance of an administrative claim. The first aspect is simply the determination of the amount, if any, of the liability on the claim. This is no different than the determination of any civil contract claim in any court. However, the second aspect entails a determination which is unique to bankruptcy proceedings. Once a determination of the amount of liability is made, the Court must then determine whether the amount to be allowed comprises "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The determination of whether or not a given expense actually served to "preserve the estate" is a determination which should not be ceded to a nonbankruptcy forum. Indeed, an arbiter would have no reason to know whether a given expense served to preserve the estate or

not. Saturn would, no doubt, submit the entire matter to arbitration and then argue its preclusive effect in this Court. This determination is at the very core of a bankruptcy court's jurisdiction. To cede this jurisdiction to arbitration would be to permit creditors to opt out of the bankruptcy process by way of an artfully-drafted clause in a contract. As this squarely conflicts with the purpose and the operation of the Bankruptcy Court, arbitration will not be ordered. Third, allowance of an administrative period claim may be determinative of the question of whether a given case is viable under Chapter 11 of the Bankruptcy Court. Such a crucial determination should not be made by any tribunal other than a bankruptcy court.

Saturn argues that Culverhouse's contract claim is not core because it is not denominated a counterclaim, citing 11 U.S.C. § 157(b)(2)(c). (Doc. 26, pp. 5-6). To be sure, Culverhouse filed its Adversary Proceeding before Culverhouse filed its administrative period claim and it is not cast in the form of a counterclaim, however, to hold that the claim of Culverhouse is not a counterclaim would be to exalt form over substance. One does not look merely at the form of matter to determine what it is, rather one looks to its substance. It is clear that the contract claim of Culverhouse and the administrative period claim of Saturn arise from the same occurrence, i.e. the termination of the two contracts in issue. Conflicting claims arising out of the same occurrence are counterclaims under any reasonable definition of the term counterclaim.[4] See, Rule 13, Fed. R. Civ. P.

---

[4] Black's Law Dictionary defines counterclaim as "a claim for relief asserted against an opposing party after an original claim has been made; esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim."

8

## IV. CONCLUSION

The Court finds that Culverhouse's claim against Saturn, which was the initial claim filed in this Adversary Proceeding, and Saturn's administrative claim against Culverhouse, which is filed in the main bankruptcy proceeding (Case No. 03-12288, Doc. 252) arise from the same occurrence. The central question here is whether Saturn properly terminated its contracts with Culverhouse. If the answer to that question is yes, the next question becomes whether Saturn is entitled to damages flowing from Culverhouse's breach and the termination of the contract. If there are damages, the Court must further find whether the liability is entitled to an administrative priority pursuant to 11 U.S.C. §§ 503, 507(a)(1). On the other hand, if Saturn did not lawfully terminate the contract, the Court must next consider whether an award of damages in favor of Culverhouse is appropriate. As it is not practical to separate the conflicting claims and as the allowance of an administrative claim has a dramatic impact upon the Chapter 11 Plan confirmation process, the determination of this matter by way of arbitration would squarely conflict with the purpose and operation of the Bankruptcy Code. For this reason, Saturn's motion to refer this matter to arbitration is denied. The Court will enter an order by way of a separate document.

Done this 23rd day of September, 2004.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Tracy W. Cary, Attorney for Plaintiff
Jayna Partain Lamar, Attorney for Defendant